GEORGE (A SLAVE) *v.* STATE, 37 Miss. R., 316.

### RAPE.

Slavery, as it exists in the United States, was unknown to the common law of England; and hence its principles are inapplicable to offenses committed by or upon a slave.

Statutory enactments do not extend to or include slaves, either to punish or protect them, unless they are specifically mentioned, or are included by necessary implication.

The law of this state defining and punishing rape does not include rape committed by a slave upon a female slave, and an indictment against a slave for such offense is a nullity.

Error to Marshall circuit court. HENRY, J.

The plaintiff in error was indicted in the court below for a rape on a female slave. His counsel moved the court to quash the indictment, which was overruled. He then pleaded not guilty, and was convicted and sentenced to be hung.

*J. D. Freeman,* for plaintiff in error.

The crime of rape does not exist in this state between African slaves. Our laws recognize no marital rights as between slaves; their sexual intercourse is left to be regulated by their owners. The regulations of law as to the white race, on the subject of sexual intercourse, do not and can not, for obvious reasons, apply to slaves; their intercourse is promiscuous, and the violation of a female slave would be a mere assault and battery. Cobb on Slavery, § 278.

By the new code, a slave can only commit a rape upon a white woman. Rev. Code 1857, 248, § 11, Art. 58; Cobb on Slavery, 91, § 94.

By the statute of 1858, p. 180, this offense was extended to Indian women. Cobb, 263, § 302.

By the white code, the unlawful carnal knowledge of a child under the age of ten years is a penitentiary offense. The common law is, therefore, abrogated in this respect, and the punishment of death for this offense does not exist here at all. Rev. Code 1857, ch. 46, Art. 218.

Besides, the common law can have no application to the sexual intercourse of African slaves here. Cobb on Slavery, 263, § 302; ib., 266, § 307.

By our code, all offenses against slaves not charged to be capital are tried by a justice and five slaveholders. Rev. Code, § 12, Art. 68; Cobb on Slavery, §§ 307–310.

*T. J. Wharton,* attorney general.

HARRIS, J.:

The only point presented by this record is whether the carnal knowledge of a female slave under ten years of age, by a negro man slave, is a capital offense under the laws of this state.

Of the three great absolute rights guaranteed to every citizen by the common law, viz., the right of personal security, the right of personal liberty, and the right of private property, the slave, in a state of pure slavery, is absolutely deprived, being, as to these, under the dominion of his master, so that infringements of these rights, even by third persons, could be remedied and punished only at the suit of the master, for the injury done him in the loss of service or the diminution in value of his slave. Cobb's Law of Slavery, § 86; Coke upon Litt., 116 *b*; Neal v. Farmer, 9 Georgia R., 555; The State v. Mann, 2 Dev. Law R., 265; Jackson, ex dem., &c., v. Lervey, 5 Cowen, 397; Fable v. Brown, 2 Hill Ch. R., 396.

The condition of African slaves, in their native country, having been one of absolute slavery, including the power over life, such would be their condition here, except so far as modified by the existing laws of their new domicile, or such subsequent legislative enactments for their benefit, as may have been made here; the law of nature denying the power over life and limb being a part of the law of every civilized state. Such power never existed in any of the United States, although it required municipal law to prescribe the punishment for such offenses. Slaves, then, having no rights prior to legislative enactments, to the municipal law alone we must look for all their rights. Cobb on the Law of Slavery, § 84; The State v. Mann, 2 Dev. L. R., 268.

By the civil law, slaves were held *pro nullis.* Indeed, they are said by Mr. Taylor, in his "Elements of the Civil Law," to have been in a much worse condition than any cattle whatever. They had no head in the state, no name, no title, no register;

they were not capable of being injured, nor could they take by purchase or descent; they had no heirs, and therefore could make no will, exclusive of what was called their *peculium;* whatever they acquired was their master's. They could not plead nor be impleaded for, but were excluded from all civil concerns whatever; they could not claim the indulgence of absence *rei-publicæ causa;* they were not entitled to the rights and considerations of matrimony, and therefore had no relief in case of adultery; nor were they proper objects of cognation or affinity, but of *quasi* cognation only; they could be sold, transferred, or pawned as goods or personal estate, for goods they were, and as such they were esteemed; they might be tortured for evidence, punished at the discretion of their lord, or even put to death by his authority. Taylor's Elements of the Civil Law, 429; Cooper's Justinian, 408.

In Jackson v. Lervey, 5 Cowen, 402, Justice Woodworth, in delivering the opinion of the court, after citing these authorities, remarks that the state of slavery in this country compares with that existing under the Roman law, in many respects. The progress of society in civilization, more correct notions on the subject of moral obligation, and, above all, the benign influence of the Christian religion, have softened many of the rigors attendant on slavery among the ancients. But the rights of the slave, in respect to marriage and the acquisition and transmission of property, by way of inheritance, remain substantially on the same ground.

That the common law is not applicable to the *status* of the slave has been further illustrated and decided in North Carolina, in the cases of The State v. Boom, Taylor's R., 103; The State v. Mann, 2 Dev. Law R., 263. In South Carolina, Fable v. Brown's Ex'rs, 2 Hill's C. R., 378; The State v. Mann, 2 Hill's Law R., 453, and 2 Strobh. R., 464. In Georgia, Neal v. Farmer, 9 Georgia R., 555 (a very learned and elaborate opinion of Justice Nisbet).

In the case of Wooley v. The State, 11 Hump. Tenn. R., 173, the opinion of the court evidently is based on the supposition that the common law has no relation to the rights of slaves, and

can afford them no protection, although a contrary opinion had been held in Fields v. The State, 1 Yerg. R., 156.

, With the exception of this last case, the cases of Kelly and Little v. The State, 3 S. & M. 524, and The State v. Jones, Walker's R., 83, in our state, and one or two very early cases in North Carolina, founded mainly upon the unmeaning twaddle, in which some humane judges and law writers have indulged, as to the influence of the " natural law," " civilization and Christian enlightenment," in amending, *proprio vigore*, the rigor of the common law, and on a supposed analogy between villanage in England and slavery here, the cases and text-writers are uniform in declaring that slavery, as it exists in this country, was unknown to the common law of England, and hence its provisions are inapplicable to injuries inflicted on the slave here. This view is further sanctioned by the fact, that in all the slaveholding states, special enactments have been provided for their protection, such as making it murder to kill a slave, and providing penalties for this and other offenses in relation to slaves, created by statute. See Cobb's Law of Slavery, § 92.

The question then arises, How far is the offense charged in this indictment recognized by our statute law? From a careful examination of our legislation on this subject, we are satisfied that there is no act which embraces either the attempted or actual commission of a rape by a slave on a female slave.

In the case of Bob Minor v. The State, 36 Miss. R., 630, decided at the last term of this court, it was held that statutory enactments never extend to, or include the slave, neither to protect nor to render him responsible, unless specifically named, or included by necessary implication. See Cobb's Law of Slavery, 91, § 94; Wash v. The State, 14 S. & M., 120; The State v. Whyte & Sadler, 2 Nott & McCord, 175; Neal v. Farmer, 9 Geo. R., 579.

Masters and slaves cannot be governed by the same common system of laws—so different are their positions, rights and duties.

This indictment cannot be sustained, either at common law or under our statutes. It charges no offense known to either system.

Let the judgment be reversed, and indictment quashed, and defendant discharged.*

* By ch. 62, p. 102, of the Session Acts of 1860, the actual or attempted commission of a rape by a negro or mulatto on a female negro or mulatto, under twelve years of age, is punishable with death or whipping, as the jury may decide.